Gregory R. SWINK, Appellant,

v.

CITY OF PAGEDALE, Daniel J. O'Connor and Tony D. Gibson, Appellees.

No. 85–2384.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 11, 1986.

Decided Feb. 2, 1987.

Ernest L. Keathley, Jr., St. Louis, Mo., for appellant.

Frank Susman, St. Louis, Mo., for appellees.

Before BOWMAN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and MORRIS S. ARNOLD,* District Judge.

BOWMAN, Circuit Judge.

Gregory R. Swink appeals from a judgment in favor of the City of Pagedale, Missouri and two of its police officers, Daniel J. O'Connor and Tony D. Gibson. Swink, who is black, brought suit pursuant to 42 U.S.C. § 1983 alleging that while in police custody on September 3, 1981, he was beaten with a blackjack by Gibson while O'Connor, a superior officer, watched but did not intervene. Swink further alleged that the failure of the City to investigate his charges or to discipline the officers made the beating part of official city policy.

The case was tried to a jury. At the close of Swink's case, the court entered a directed verdict for the City. At the conclusion of the trial, the jury rendered a verdict in favor of O'Connor and Gibson. Judgment was entered accordingly. Swink's appeal raises the following claims of error: (1) that the trial court[1] erred in denying Swink's motion for a default judgment against Gibson and in allowing Gibson to file his answer immediately before trial; (2) that the trial court improperly limited Swink's voir dire of prospective jurors on the issue of racial prejudice; (3) that the jury instructions were erroneous because they referred to an "unjustified" beating; and (4) that it was error to dismiss the City upon the City's motion for directed verdict. We affirm.

## I.

Swink argues that the trial court erred by failing to enter a default judgment against Gibson when Gibson did not file an answer for two years following his receipt of the complaint. Gibson was served on September 12, 1983 and had not responded individually, nor joined the timely answers of the other defendants, at the time of the pre-trial conference on September 12, 1985. However, Swink did not move for an entry of a default judgment until September 17, 1985, the date on which trial was to begin and a date more than two years following service of the complaint. The motion for default judgment was not preceded by an entry of default, so Gibson was not in the position of having to ask the trial court to set aside such an entry. See Fed.R.Civ.P. 55(c). For reasons unrelated to the default motion, the trial was postponed until September 23, 1985. Immediately prior to the beginning of the trial on September 23, a hearing was held in chambers. At that time, the magistrate denied the motion for entry of a default judgment and allowed Gibson to adopt the joint answer filed by O'Connor and the City.

The entry of a default judgment is governed by Fed.R.Civ.P. 55. In reviewing the denial of a motion for default judgment this Court must determine whether the trial court abused its discretion. See *Federal Trade Commission v. Packers Brand Meats,* 562 F.2d 9, 10 (8th Cir.1977). In light of the facts present in this case, we find no abuse of discretion. The magistrate found that Swink had not demonstrated that he would be substantially prejudiced by a denial of his motion.[2] Moreover, it seems likely that Gibson thought the case against him would be dismissed or handled by attorneys for the other defendants. The magistrate implicitly held that

* The HONORABLE MORRIS S. ARNOLD, United States District Judge for the Western District of Arkansas, sitting by designation.

1. The Honorable David D. Noce, Magistrate, United States District Court for the Eastern District of Missouri, who presided by stipulation of the parties pursuant to 28 U.S.C. § 636(c)(3).

2. Swink argues that he was unfairly prejudiced by the very fact that Gibson was allowed to

defend the claim. We cannot agree. There is a strong public policy, supported by concepts of fundamental fairness, in favor of trial on the merits, *see, e.g., Jackson v. Beech,* 636 F.2d 831, 835 (D.C.Cir.1980), particularly when the monetary damages sought are substantial. *See generally* 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2693, at 482–85 (2d ed. 1983).

the failure to answer was not willful, noting that Gibson

> has [not] absconded from the jurisdiction of the court or tried to avoid liability by physically taking himself away or avoiding the proceedings.

> The suggestion is that the defendant has through inadvertence failed to file an answer. His status as a trial witness has been noticed [for] some time. His relevance as a witness has been a matter of knowledge since before the beginning of the lawsuit and his deposition was taken last Friday, and for these reasons, I believe that justice requires that he be given an opportunity to defend himself in this lawsuit.

Transcript at 1–6. Finally, we note that the trial was not delayed at all as a result of the magistrate's ruling, but commenced immediately following the decision to allow Gibson to join the answer of the other defendants. In light of these facts, we believe it is clear that the magistrate did not abuse his discretion in denying Swink's motion for entry of a default judgment against Gibson.

## II.

Swink contends that the magistrate abused his discretion by refusing to allow Swink's attorney to probe as deeply as he would have liked during the voir dire examination into the possibility of racial bias. Swink's attorney was permitted to ask prospective jurors whether the presence of a black plaintiff and two white defendants would cause them to be biased, but was halted when he began inquiring into the jurors' definitions of racism and the extent to which they lived in mixed-race neighborhoods or socialized with blacks.

The trial court is given wide discretion in the conduct of voir dire. *United States v. Bear Runner,* 502 F.2d 908, 911 (8th Cir. 1974). This Court will not overturn the determination of the trial court on issues concerning the scope of voir dire absent a showing that the court abused its discretion. *Wichmann v. United Disposal, Inc.,* 553 F.2d 1104, 1109 (8th Cir.1977); *cf.*

*United States v. Delay,* 500 F.2d 1360, 1366 (8th Cir.1974).

■ This Court has not found any reported case, and Swink has called none to our attention, in which the result of a civil jury trial has been challenged because of a failure of the trial court to inquire sufficiently into the possible racial bias of the potential jurors. Even considering the standards applicable to voir dire in criminal cases, we can find no abuse of discretion in the trial court's limitation of voir dire in this instance. As this Court stated in *United States v. Powers,* 482 F.2d 941 (8th Cir.1973), *cert. denied,* 415 U.S. 923, 94 S.Ct. 1426, 38 L.Ed.2d 479 (1974):

> For more than four decades, it has been the rule in federal courts that a trial court *must* inquire as to possible racial bias of the veniremen when the defendant is a member of a racial minority. *Aldridge v. United States,* 283 U.S. 308, 51 S.Ct. 470, 75 L.Ed. 1054 (1931). Yet, as recently noted by the Supreme Court in *Ham v. South Carolina,* 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973), neither the supervisory power of the Supreme Court over lower federal courts as exercised in *Aldridge* nor the Due Process Clause of the Fourteenth Amendment as applied to the state courts in *Ham* require the trial court "to put the question in any particular form, or to ask any particular number of questions on the subject, simply because requested to do so by petitioner." 409 U.S. at 527 [93 S.Ct. at 850].... If the trial court need not have asked any further questions than a general one regarding racial bias, *a fortiori* it need not have permitted the participation of counsel in further questioning.

482 F.2d at 944; *see also United States v. Bell,* 573 F.2d 1040, 1043 (8th Cir.1978); *United States v. Delay,* 500 F.2d at 1364. Swink's attorney was permitted to ask each of the potential jurors individually whether they felt that they would be racially biased and also was permitted to inquire into the employment of blacks where the jurors worked. We cannot say that this was an

insufficient inquiry to discover bias, and, therefore, we conclude that the limitation of Swink to these questions was not an abuse of discretion.

## III.

Swink argues that the jury instruction describing the elements of the alleged Fourteenth Amendment violation and the verdict directors which refer to that instruction were in error and were prejudicial to his case.[3] Swink contends that the references to an "unjustified" beating in those instructions were confusing to the jury and could have led the jury to believe that there was a question as to the justifiability of any beating Swink received when, in fact, the defendants had not presented a justification defense.[4]

■ While justification for the alleged beating was not at issue, and the instruction was therefore erroneous, we do not believe it is likely that the instruction created confusion in the minds of the jurors. Considering the testimony by Swink, Gibson, and O'Connor that Swink did nothing which would have given the police officers a reason to beat him, and also considering that the defendants did not assert a justification defense, the jury could only have

concluded that if Swink had been beaten, the beating was unjustified. Instead, the jury obviously credited the testimony of the police officers that no beating had occurred. Accordingly, we find that while the court's decision to include the word "unjustified" in the jury instruction was error, the error could not have affected the outcome of the trial, and therefore was harmless.

## IV.

■ Finally, Swink contends that the trial court erred in granting the City's motion for a directed verdict at the close of his evidence. This contention fails, however, because the jury verdict in favor of the two police officers, which we today confirm, renders the dismissal of the City academic. The Supreme Court faced an almost identical situation in *City of Los Angeles v. Heller,* —— U.S. ——, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986). There, a § 1983 action had been brought against a police officer and the city and police commission which employed him. The jury returned a verdict in favor of the officer, and the district court then dismissed the claims against the other parties. The Supreme Court upheld that dismissal, noting that the verdict in

---

**3.** Swink contests the wording of jury instruction numbers 7, 8, and 9. Instruction No. 7, which defined the Fourteenth Amendment violation for the jury, is as follows:

> The Fourteenth Amendment to the Constitution of the United States provides that no state shall deprive any person of liberty, without due process. This provision protects an arrested person from punishment such as an *unjustified* beating at the hands of a police officer. It also requires the exercise of reasonable efforts by a police official to protect an arrested person from an *unjustified* beating by a fellow police officer. In order to establish a constitutional violation, plaintiff must show that the police officials knowingly and *unjustifiably* beat him or acquiesced in a beating of him.

(Emphasis added).
Instruction number 8 stated:

> Your verdict must be ... against defendant Tony D. Gibson, if you find from a preponderance of evidence the following facts:
>
> .   .   .   .   .

Second, that the aforesaid acts and conduct of defendant Gibson deprived plaintiff of his federal constitutional right not to be deprived of liberty without due process of law *as defined elsewhere in these instructions....*

(Emphasis added).
Instruction number 9 was substantially similar:

> Second, defendant Daniel J. O'Connor, while a police official of Pagedale, observed defendant Tony D. Gibson beat plaintiff but took no reasonable action to protect plaintiff from defendant Gibson; and
>
> Third, the aforesaid acts and conduct of defendant O'Connor deprived plaintiff of his federal constitutional right not to be deprived of liberty without due process of law *as defined elsewhere in these instructions.*

(Emphasis added).

**4.** The testimony at trial went to the issue of whether Swink had been beaten. Swink testified that he was beaten, while Gibson and O'Connor testified that no beating had taken place and that their dealings with Swink on the night of his arrest were non-confrontational.

favor of the officer "was not only conclusive as to Officer Bushey, but also as to the city and its police commission. They were sued only because they were thought legally responsible for Bushey's actions; if the latter inflicted no constitutional injury on respondent, it is inconceivable that petitioners [the city and police commission] could be liable to respondent." *Id.* 106 S.Ct. at 1573. This reasoning is equally applicable to the present case. Moreover, our review of the record leads us to conclude that even if the jury had found that O'Connor and Gibson were liable to Swink, the trial court's entry of a directed verdict in favor of the City still would have been correct, since at trial Swink presented no evidentiary basis for holding the City liable for a random act of police brutality. *See Monell v. New York City Department of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). Thus, we hold that the trial court did not err in directing a verdict in favor of the City.

## V.

In summary, we find no reversible error. The magistrate did not abuse his discretion in denying entry of a default judgment against Gibson or in limiting voir dire. We find no error in the order dismissing the City at the close of Swink's case. Moreover, we find that any error committed by including references to an "unjustified" beating in the instructions to the jury was harmless error. Accordingly, we affirm the judgment below.