_____

No. 95-2626
_____

Michael Ryan; Laurel           *
Annechino, *
                               *
        Plaintiffs - Appellants,*
                               *
v.                             *
                               *
                               *
Board of Police Commissioners, *
of The City of St. Louis;      *
David Robbins; James Conway;   *
Charles Mischeaux; Rita Knapf; *
Freeman Bosley, Each in his or *
her individual and respective  *
capacities as a member of the  *  Appeal from the United States
St. Louis Board of Police      *  District Court for the
Commissioners; Clarence Harmon,*  Eastern District of Missouri.
Individually and in his official*
capacity as Chief of Police of *
the St. Louis Metropolitan     *
Police Department,             *
                               *
            Defendants,        *
                               *
Ralph Harper; Mark Murphy;     *
Tom Noonan; Tom Majda, Jr.,    *
                               *
        Defendants - Appellees, *
                               *
Kevin Krantz, individually and *
in their official capacity as  *
Police Officers and Employees  *
of the St. Louis Metropolitan  *
Police Department,             *
                               *
            Defendant.         *

_____

Submitted:  January 12, 1996

Filed:  September 24, 1996
_____

Before RICHARD S. ARNOLD, Chief Judge, JOHN R. GIBSON and BOWMAN, Circuit
     Judges.

_____

JOHN R. GIBSON, Circuit Judge.


Michael Ryan and Laurel Annechino appeal the district court's grant
of judgment as a matter of law in favor of the St. Louis Board of Police
Commissioners and an adverse jury verdict in favor of officers of the St.
Louis Metropolitan Police Department in their civil rights claim, 42 U.S.C.
§ 1983 (1994), against the officers and the Board.  Ryan and Annechino
brought a civil rights action, alleging that the officers violated their
constitutional rights during a traffic stop.  Ryan and Annechino argue that
the district court abused its discretion in permitting the testimony of a
New York police officer regarding a later incident involving a similar
traffic stop and arrest of Ryan.  They contend that they were not informed
of the incident because of the defendants' failure to disclose the
information in response to discovery requests, that the evidence was
inadmissible character evidence, and that they did not open the door for
its admission.  They also argue that the district court erred in granting
judgment as a matter of law in their claim against the Board.  We affirm
the judgment in favor of the Board, but reverse and remand to the district
court for a new trial as to the officers against whom the case was
submitted.


On October 14, 1992, Ryan and Annechino were travelling east through
St. Louis along Interstate 44 in a Lincoln Continental with Arizona license
plates.  Sergeant Ralph Harper pulled in behind the Ryan vehicle and
initiated a traffic stop.  What happened next and the motive underlying the
stop were the central issues at trial.


Ryan received a speeding ticket, and was later found not guilty of
the charge.  At trial, Ryan and Annechino argued that

the speeding ticket was merely a pretext for the stop. Their theory of the case was that they were stopped because their vehicle satisfied a drug courier profile, and the St. Louis Metropolitan Police Department had a policy of stopping those vehicles conforming to the profile.

Ryan and Annechino testified that Sergeant Harper approached their car with his gun drawn. Shortly thereafter, other officers arrived at the scene. Annechino claimed that she was thrown to the ground and handcuffed. She testified that as a result she suffered abrasions, bruises, and emotional damages. In addition, Ryan testified that he was punched in the face, dragged from the car, thrown to the ground, kicked, placed against the trunk of the car, and then handcuffed. After being handcuffed, both Ryan and Annechino testified that officers grabbed Ryan's ankles and pulled them out from under him. This caused Ryan to fall to the ground, hitting his head and shoulder on the pavement. Ryan later signed a consent to search form, and a drug dog was brought in to inspect the car. After nothing was found, Ryan refused medical attention, received the speeding citation, and Ryan and Annechino proceeded on their way.

The officers and the Board zealously contested these allegations. Sergeant Harper testified that when Ryan refused to comply with his instructions to show his hands, he called for backup and drew his weapon. Ryan refused to get out of the car, so the officers physically lifted him out of the car, leaned him over the trunk, and handcuffed him. The officers denied throwing Annechino to the ground. In their view, the situation was controlled, the canine search proved negative, they issued Ryan a speeding citation, and Ryan and Annechino were released.

Ryan and Annechino brought this civil rights action alleging that the officers' conduct during the stop violated their

-3-

constitutional rights. As part of their discovery, Ryan and Annechino asked the officers and the Board to produce:

> All documents relating to or evidencing each instance in which any Defendant or other police officer or agent of the DEPARTMENT accessed the data bases of the police computers, including but not limited to NCIC, MULES, REGIS and the Missouri Department of Revenue driving records, with regard to Plaintiff RYAN or Plaintiff ANNECHINO.

The officers and the Board answered the request by stating that "no such documentation exists as to accessing the computer."

On cross-examination, Ryan was asked if he had been stopped by police since the St. Louis incident. Ryan admitted that he had, but he did not recall when. Ryan and Annechino objected to this line of questioning. During a bench conference, the following colloquy took place:

> MR. FITZGIBBON: [He has pleaded that his] wrists were injured in this particular incident in this case.
>
> Almost a year to the day after this incident in St. Louis, he was arrested, and almost the same situation that we have here. I have the police report.
>
> MR. DALTON: Which has never been disclosed to us. You know, I don't know where he's getting this information. We sent out discovery requests and, you know, this is all ambush.
>
> THE COURT: Yeah.
>
> MR. FITZGIBBON: This is not ambush, Your Honor, they had never asked this question. I asked him whether or not he had been arrested and we went into that whole routine and he told me when he had been arrested.
>
> Now in this case here we found out that he was arrested a year, almost a year to the day in Rochester; that he did the same-type things in this arrest; that they had to pull him out of the car; that he bent -- he was holding on so tight with his wrist and his arms that they pulled him out of the car.

THE COURT:  You can ask him if that occurred.

. . . .

MR. DALTON:  This is during the trial and he's springing it on us.

. . . .

MR. DALTON:  . . . [W]e sent them discovery requests and asked for all arrest information concerning him and, you know, we don't get this report, don't hear about it until during -- the trial is going on?  I mean that --

THE COURT:  Did they in fact ask for all the information regarding the arrest?

. . . .

The court excused the jury from the courtroom, and the discussion resumed as follows:

THE COURT:  Okay.  Now supposedly the plaintiffs are saying they asked for that information.

MR. DALTON:  Well --

THE COURT:  And that you didn't disclose it to them.  If that's the fact --

MR. DALTON:  Judge, one of the things that we asked for are all documents relating to or evidencing each instance in which any defendant or other police officer or agent of the department accessed the data bases of the police computers, including but not limited to the NCIC, MULES, REJIS and the Missouri Department of Revenue driver's records with regard to plaintiff Ryan or [] Annechino and that is how they got this information.

They had somebody in the department access those records, they found out that he was arrested and then they're coming in with this report when we've never been provided those documents.  This is highly prejudicial and it is irrelevant and they're trying to cloud the issues in the case.

. . . .

-5-

THE COURT:  Are you aware, are you aware of that?

MR. DALTON:  I was not.

MR. RYALS:  Absolutely not.  Absolutely not.

THE COURT:  The client had not disclosed that to you?

MR. DALTON:  No.

MR. RYALS:  No.

. . . .

THE COURT:  . . .  I think it is still pretty much discretionary with the Court.  The city should have given that information to the plaintiffs.

However, it seems to the Court that the plaintiff is complaining of continued wrist injury and emotional distress out of an incident occurring here in this city and if that same thing happened subsequent, doesn't even tell his own counsel about it, I think that that would be proper to bring that forth.

Just as to the -- he's claiming permanent injury to his wrist and --

. . . .

THE COURT:  I disapprove, I have to say, Mr. Fitzgibbon, of your not disclosing this information to the --

MR. FITZGIBBON:  Judge, if I may, the interrogatory -- the request for production wants documents relating to or evidencing each instance in which any defendant or other police officer or agent accessed the data bases of the police computers.

. . . .

MR. FITZGIBBON:  They want records of our accessing the computer.

THE COURT:  Yes.

MR. FITZGIBBON:  The answer to that was, "No such documentation exists as to accessing the computer" because you don't get a documentation of access.  We

access the computer, yes, but there's no documentation of each instance.

. . . .

MR. FITZGIBBON: But Officers Majda and Noonan recall calling in on their radio to determine whether or not plaintiff Michael Ryan was a wanted individual. They called in [on] their radio. This is what we thought what they wanted.

At the time they called in on their radio, they accessed REJIS, but there's no record of or documentation as to their access, none whatsoever. They call up, they get the information. There was no documentation as to the access and that's what they did when they picked these people up and they accessed the record.

The interrogatory or the request for production is very unclear.

. . . .

MR. FITZGIBBON: It's merely asking for a documentation of access, not the record itself.

. . . .

MR. DALTON: Well, a document that would evidence the access would be a printout of his arrest record and we have had cases before in which we know that people in their office run a record check on our clients and look at them during the trial, which is exactly what we wanted to get.

MR. FITZGIBBON: You should have asked for it.

MR. RYALS: We did ask for it.

MR. DALTON: We did.

MR. FITZGIBBON: You asked for a documentation of access to that.

THE COURT: Well, there's a -- I'm going to let you do it, Mr. Fitzgibbon.

Ryan then testified regarding the similar incident that occurred in Rochester, New York.

As part of their case in chief, the defendants then called Officer John Zampatori to describe the Rochester incident. Before Officer Zampatori took the stand, Ryan and Annechino again objected to the testimony, stating:

> MR. RYALS: The grounds for the objection are as follows: First, we had no notice of the existence of this officer, his testimony, and we specifically asked in discovery for any inquiries pertaining to our client.
>
> We believe, because of past experiences with the city counselor's office, that they would have discovered the incidents described by this officer via an inquiry to the NCIC and my experience with these NCIC reports is that there is a printout generated. We were not provided a copy of that printout nor the report generated as a result of this incident, so the first objection is based on surprise . . . .

The officers and the Board reiterated their position that there was no documentation showing when officers accessed the computer.

Before Officer Zampatori began his testimony, the court instructed the jury as follows:

> THE COURT: Ladies and gentlemen, we're going to hear the testimony of Officer John Zampatori from the Rochester Police Department, Rochester, New York Police Department.
>
> The evidence that he will be testifying about will be considered by you only for the purpose of determining -- or on the issue of damages and injuries sustained by the plaintiffs.

Officer Zampatori testified that he stopped Ryan in Rochester, New York, after Ryan had nearly run into him. He testified that Ryan refused to produce his driver's license and insurance card. Ryan was placed under arrest, but refused to exit his vehicle. Officer Zampatori then testified:

-8-

We forcibly had to pull the driver out of the driver's side of the pickup truck. As I went to pull the driver out, he took his right arm and put it down through the steering wheel and he anchored himself in the truck so we could not take him out. We had to forcibly pull him out of the truck. He resisted the whole time as we were pulling him out, and we broke the grip on the steering wheel.

. . . .

. . . [T]he steering column was bent towards the driver's door. He had a hold of the steering wheel with such great force that when we pulled him, wouldn't let go, and it bent the steering column.

. . . .

. . . [A]s we were pulling him out of the car, he took his left hand, pushed it into my chest. He had his right hand through the steering wheel and he had a hold of his New York City driver's license. As his grip broke and he started coming out of the truck, he threw the New York state driver's license at me.

Officer Zampatori charged Ryan with obstructing governmental administration, resisting arrest, and failure to yield the right of way to a pedestrian.

At the conclusion of the evidence, the district court granted judgment as a matter of law in favor of the Board. Ryan and Annechino voluntarily dismissed Officer Krantz and Chief Harmon from the case. The jury returned a verdict in favor of each of the officers on all counts, and the district court entered judgment in their favor. The court also assessed costs to the plaintiffs. Ryan and Annechino appeal.

**I.**

We review the district court's decision to admit evidence over a party's objection for abuse of discretion. United States v. McMurray, 34 F.3d 1405, 1411 (8th Cir. 1994), cert. denied, 115

-9-

S. Ct. 1164 (1995). Ryan and Annechino argue that the court abused its discretion in admitting evidence of Ryan's subsequent arrest because the officers and the Board failed to disclose the evidence during discovery, in spite of a specific request designed to uncover this type of information. In their brief Ryan and Annechino state: "From past experience, Plaintiffs' counsel had knowledge that defense counsel and/or the Defendant officers, who have access to national, state and local police computer data bases, run record checks on Plaintiffs and witnesses called by the Plaintiffs . . . ." Thus, during discovery, Ryan and Annechino asked the officers and the Board to produce:

> All documents relating to or evidencing each instance in which any Defendant or other police officer or agent of the DEPARTMENT accessed the data bases of the police computers, including but not limited to NCIC, MULES, REGIS and the Missouri Department of Revenue driving records, with regard to Plaintiff RYAN or Plaintiff ANNECHINO.

The officers and the Board responded that "no such documentation exists as to accessing the computer." They later explained this response at trial by stating that "you don't get a documentation of access. We access the computer, yes, but there's no documentation of each instance." They now argue that this request does not ask for the results of accessing the computer, but for documentation of the individual instances of access. They contend that the "failure to produce was entirely proper, because the computer does not document instances of access."

Several significant facts are presented. First, the interrogatory sought documents "relating to or evidencing" the accessing of databases. In the colloquy surrounding the objection, counsel for the officers and the Board stated unequivocally "I have the police report." However, the officers and the Board argue that the police report was not evidence of <u>accessing</u> the databases.

Without becoming enmeshed in semantic arguments on the meaning of the interrogatory, we concede that the police report may not be evidence of an individual instance of access to the computer databases. On the other hand, it is most evident that the police report related to the accessing of the databases. We are satisfied that the response of the City Counsellor's office was only, in a most technical sense, partly true, and we think it is abundantly evident that the interrogatory answer did not disclose documents relating to the search of the databases. Counsel for the officers and the Board made it clear that he had obtained the Rochester police report from the database and that the defendants had accessed the computer "but there's no documentation of each instance." The district court made plain its displeasure with the situation. The district judge commented on the fact that plaintiffs had asked for the information and it wasn't disclosed to them, and that the officers and the Board should have given that information to Ryan and Annechino. The court stated, "I disapprove, I have to say, Mr. Fitzgibbon, of your not disclosing this information . . . ." After this colloquy, counsel for the officers and the Board stated that Ryan's counsel was merely asking for documentation of access, not the record itself.

We are convinced that the lengthy colloquy evidences an effort by counsel for the officers and the Board to cloud the refusal to produce documents relating to accessing the databases by stressing a hypertechnical interpretation of the interrogatory and arguing that the question called only for documents evidencing individual instances of access to the databases. While we have the strongest respect for the learned district judge presiding over this trial, and give deference to his exercise of discretion, we believe that the lengthy argument on this issue so beclouded and obfuscated the issues with reference to the interrogatory answer that an abuse of discretion resulted.

The information on Ryan's later arrest would have been most significant to Ryan's counsel, considering the striking similarity of it to the arrest that gave rise to the trial. The adverse impact of Officer Zampatori's testimony is evident. With knowledge of the Rochester incident, counsel for Ryan and Annechino would have had full knowledge of the circumstances surrounding the case before them. While we need not speculate on what their actions might have been if given the requested information, we are satisfied that what occurred was in fact trial by ambush.[1]

---

[1]For example, the officers and the Board argue that Ryan and Annechino opened the door to admission of Officer Zampatori's testimony regarding the Rochester incident. On direct examination, Annechino, without objection, testified as follows:

Q:   [Y]ou being pulled over was not an unusual occurrence on this trip, you've been stopped once before; is that right?
A:   Uh-huh.
Q:   Okay. And let go with no problem?
A:   Right.
Q:   All right. And that happened where?
A:   Colorado I think.

The fact that counsel for the officers and the Board did not object to this testimony at this point in the trial, but instead waited until much later in an effort to use this testimony as the springboard for introducing the Rochester incident is telling. Had the Rochester arrest been disclosed as requested, it is unlikely that Annechino would have been asked about the Colorado stop. On appeal, the officers and the Board argue that error was invited, yet at the time of the claimed invitation counsel for Ryan and Annechino had no knowledge of the facts material to the inquiry, which had been sought and not disclosed.

While this testimony illustrates the impact of the failure to disclose the Rochester arrest, the argument that Ryan and Annechino opened the door for testimony about the Rochester incident fails for other reasons as well.

"The `open the door' or `invited error' doctrine provides that where a proponent introduces inadmissible evidence, a court may permit the opponent to introduce similarly inadmissible evidence in rebuttal or engage in otherwise-improper cross-examination. A court may apply the

-12-

We do not countenance Ryan's failure to inform his counsel about the later similar incident. However, the record before us demonstrates that the officers and the Board made every effort to not produce information regarding Ryan's Rochester arrest from counsel for Ryan and Annechino.

We believe that the request for production was clear and explicit, despite the defendants' contention to the contrary. More importantly, any documentation obtained from the databases and showing Ryan's criminal record or the Rochester arrest fell squarely within the scope of the request.

The evidence regarding Ryan's Rochester arrest was a key component of the defense at trial. By waiting until trial to disclose this information, the officers and the Board hindered the efforts of counsel for Ryan and Annechino to effectively prepare their case and to effectively address the legal issues surrounding the admissibility of the evidence. Further, the strategy adopted by the officers and the Board virtually assured that the district court would not be in a position to make a well-reasoned decision

---

`opening the door' doctrine in order to neutralize or cure any prejudice incurred from the introduction of the evidence . . . ."

United States v. Martinez, 988 F.2d 685, 702 (7th Cir.), cert. denied, 510 U.S. 841 (1993). Annechino's direct testimony about the Colorado stop was irrelevant and improper in this case. Thus, the officers and the Board normally would be allowed to rebut Ryan and Annechino's claim of peaceable behavior.

However, the doctrine cannot apply here, as the district court expressly instructed the jury about the purpose of the testimony. The court's limiting instruction plainly stated that Officer Zampatori's testimony was to be considered only for the purpose of damages. It said nothing about rebutting Annechino's previous testimony. It is presumed that the jury follows its instructions. Ralston Purina Co. v. Parsons Feed & Farm Supply, Inc., 364 F.2d 57, 62 (8th Cir. 1966). The officers and the Board cannot ignore the limiting instruction and now argue that evidence was offered to rebut Annechino's statement about the Colorado stop.

regarding the legal issues surrounding the admissibility of the evidence.

Further, it is evident that the actions of counsel for the officers and the Board violated the Federal Rules of Civil Procedure. The information requested in the interrogatory was relevant to the case and it was not privileged. See Fed. R. Civ. P. 26(b)(1). Both Rules 33 and 34 provide that a party may request information within the scope of Rule 26(b). See Fed. R. Civ. P. 33(c), 34(a). In addition, both the old and the new versions of Rule 26(e)(2) require a party to amend a response which was incorrect when it was made. By not providing the requested police report, information that was well within the scope of permissible discovery, the officers and the Board encroached upon the principle of liberal discovery under the Federal Rules.

In short, more than six months before the trial began, the officers and the Board possessed information regarding Ryan's arrest in Rochester, New York. The officers and the Board gained this information by accessing the various criminal record databases available to them. Ryan and Annechino specifically requested that this information be provided during discovery. The officers and the Board failed to provide the requested information, and this failure was extremely prejudicial to the preparation and presentation of Ryan and Annechino's case. Thus, we hold that the district court abused its discretion in admitting evidence of Ryan's arrest in Rochester, New York. Cf. Denton v. Mr. Swiss of Missouri, Inc., 564 F.2d 236, 240 (8th Cir. 1977) (holding that dismissal is proper "where there has been a willful failure to answer interrogatories," especially when the "failure makes it impossible to determine the factual merits of a claim.").

This evidence permeated the entire trial, a trial where the jury's task was to decide what happened during the stop on October 14, 1992. Such a determination is necessarily dependent on the

credibility of the witnesses.  See Rush v. Smith, 56 F.3d 918, 921 (8th Cir.) (en banc) (noting the "critical importance of the jury's assessment of witness credibility" in civil rights cases), cert. denied, 116 S. Ct. 409 (1995).  The heart of the case was whether the jury would believe the testimony of Ryan and Annechino or that of the police.  See Sanders-El v. Wencewicz, 987 F.2d 483, 485 (8th Cir. 1993).  "Such a case, of necessity, brings the credibility of the witnesses sharply into focus--thus highlighting the significance of the resulting prejudice."  Id.

We are deeply concerned that the conduct of counsel for the officers and the Board seemingly represents a pattern of conduct.  In Rush, 56 F.3d at 919-20, this court considered a quite similar situation where the plaintiff in a section 1983 action against St. Louis police officers and the Board requested production of documents related to firearms training. After repeated attempts to obtain discovery, including a court order compelling production of documents, the district court denied two motions for default judgment by the plaintiff during trial based on the defendants' failure to comply with the court's discovery orders.  While we found it unnecessary to reach the discovery issue on appeal, as the case was decided on other grounds, we noted:

> We are, however, dismayed . . . by the conduct of defendants during pre-trial discovery . . . .  The defendants flouted not only our liberal discovery rules but also the district court's order compelling production of documents.  There is no excuse for such obstructionist tactics.

Id. at 921 n.1.  The conduct here mirrors the conduct in Rush, except that Ryan and Annechino were unable to seek relief from the district court during the discovery process.  The officers and the Board denied the existence of the information sought, thus preventing any sort of hearing on a motion to compel production.

Instead, Ryan and Annechino were surprised at trial by the very evidence they requested during discovery.

Indeed, the conduct here is somewhat similar to that in Sanders-El, 987 F.2d at 484, where a member of the St. Louis City Counsellor's office representing police officers in an excessive force case dramatically dropped a lengthy computer printout supposedly representing the plaintiff's criminal record in front of the jury. We considered this to be "intentionally prejudicial conduct of defense counsel," and reversed the judgment in favor of the defense. Id. In the case before us, it was not a dramatic demonstration before the jury that was involved, but rather a failure to disclose that which was requested and required by the Federal Rules of Civil Procedure to be produced. In both cases, inappropriate actions by counsel materially altered the course, and perhaps the outcome, of the trial.

We reverse the judgment in favor of the officers and the order requiring Ryan and Annechino to pay attorneys' fees in the case, and we remand the case to the district court for a new trial. Since we remand the case for a new trial, we need not address each of the justifications offered by the officers and the Board for admitting the evidence of Ryan's subsequent arrest. The district court may consider on remand whether discovery sanctions are in order, and whether the evidence will be admitted during the new trial.

## II.

Ryan and Annechino argue that the district court erred in granting judgment as a matter of law in favor of the Board. We review the entry of judgment as a matter of law de novo. Johnson v. Cowell Steel Structures, Inc., 991 F.2d 474, 478 (8th Cir. 1993). We must determine if Ryan and Annechino introduced sufficient evidence to create an issue of fact for the jury. Id.

-16-

A mere scintilla of evidence is insufficient.  <u>Larson v. Miller</u>, 76 F.3d 1446, 1452 (8th Cir. 1996) (en banc).  "[J]udgment as a matter of law is proper when the record contains no proof beyond speculation to support the verdict."  <u>Id.</u>

In order to establish that the Board supported a custom or practice of unconstitutionally stopping cars based on a drug courier profile, Ryan and Annechino were required to show:

1)   The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2)   Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3)   That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was the moving force behind the constitutional violation.

<u>Jane Doe "A" v. Special Sch. Dst.</u>, 901 F.2d 642, 646 (8th Cir. 1990).

Ryan and Annechino introduced into evidence documents entitled St. Louis Metropolitan Police Department Canine Specialty Search Report.  These reports documented canine searches along Interstate 44 during 1994 and 1995.  After carefully reviewing these documents and the testimony regarding the use of drug courier profiles in the St. Louis Metropolitan Police Department, we conclude that on this evidence no reasonable jury could have found that a custom or practice of unconstitutionally stopping motorists based on drug courier profiles existed within the department.  There was simply no evidence of a continuing, widespread, persistent pattern of unconstitutional misconduct by officers of the Department.  Further, Ryan and Annechino failed to demonstrate that the Board either authorized or remained indifferent to such a practice.

Thus, the district court did not err in granting judgment as a matter of law in favor of the Board.  Cf. Swink v. City of Pagedale, 810 F.2d 791, 795 (8th Cir.) (noting that the plaintiff "presented no evidentiary basis for holding the City liable for a random act of police brutality"), cert. denied, 483 U.S. 1025 (1987).

## III.

In conclusion, we affirm the judgment in favor of the St. Louis Board of Police Commissioners.  We reverse the judgment and costs in favor of the officers and remand for a new trial.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-18-