**PRINCIPAL LIFE INSURANCE CO.,**
**an Iowa corporation, Plaintiff,**

v.

**Krista M. GORSCHE, as Executor for**
**the Estate of Donald D. Kurth and**
**Sean Connor, Defendants.**

**No. 4:09–cv–494.**

United States District Court,
S.D. Iowa,
Central Division.

Aug. 20, 2010.

---

Scott Alan Hall, Carney & Appleby PLC, Karl T. Olson, Bradshaw Fowler Proctor & Fairgrave, Des Moines, IA, for Defendants.

## ORDER

ROBERT W. PRATT, Chief Judge.

Before the Court is a "Motion to Reconsider Order of Default Judgment Granted to Defendant Donald D. Kurth,"[1] filed June 25, 2010 by Sean Connor ("Connor"). Clerk's No. 12. Krista M. Gorsche, as Executor for the Estate of Donald D. Kurth[2] (hereinafter referred to as "Kurth"), filed a resistance to the Motion on July 30, 2010. Clerk's No. 17. Connor filed a Reply on August 2, 2010. Clerk's No. 18. Though Kurth has requested a hearing on the matter, the Court does not believe a hearing will substantially aid it in resolving the present motion. The matter is, therefore, fully submitted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Principal Life Insurance Co. ("Principal") filed a Complaint for Interpleader in the above-captioned action on December 9, 2009. In short summary, Principal's Interpleader Complaint asserts the following facts: Principal issued a Group Term Life Insurance policy ("the policy") to Pioneer Hi–Bred International, Inc. ("Pioneer").

---

1. While Connor contends that his motion is one to "reconsider," pursuant, in part, to the Court's Local Rule 7(e), the Court believes the motion is more properly styled as a "Motion to Set Aside Default and Default Judgment," and will treat it as such.

2. Gorsche was substituted as a party for Donald Kurth on July 26, 2010 (Clerk's No. 16), following Donald Kurth's death during the pendency of these proceedings. To avoid confusion, however, the Court will continue to reference "Kurth," despite the substitution of Gorsche, throughout this Order.

Compl. ¶ 7. Karla Kurth ("Ms. Kurth"), an employee of Pioneer, was insured under the policy. *Id.* At the time of Ms. Kurth's death on August 29, 2009, Ms. Kurth's beneficiary designation, which was dated September 24, 1997, named Donald and Nancy Kurth (Ms. Kurth's parents) and Connor as beneficiaries. *Id.* ¶ 8. Because Nancy Kurth predeceased Ms. Kurth, the beneficiary designation, if applicable, would result in Kurth and Connor each receiving half of the proceeds of the policy. *Id.* Principal paid half of the policy's proceeds to Kurth, but did not pay the other half to Connor because Kurth had indicated to Principal his intent to contest Connor's status as a designated beneficiary as contrary to Ms. Kurth's intent. *Id.* ¶ 9.

Because Principal was subject to multiple claims on the remaining life insurance proceeds, Principal filed an Interpleader Complaint, pursuant to 28 U.S.C. § 1335, and deposited the contested portion of the life insurance proceeds, totaling $69,157.25, with the Clerk of Court. *See* Clerk's Docket (entry dated Apr. 23, 2010 noting payment received from Principal). Principal served the Summons and Interpleader Complaint on Connor on January 22, 2010. *See* Clerk's No. 2. Kurth waived service on March 24, 2010 (Clerk's No. 3) and filed an answer to the Interpleader Complaint on April 6, 2010. Clerk's No. 4.

On April 8, 2010, Kurth filed an "Affidavit in Support of Default Entry Pursuant to Federal Rule 55(a)," wherein he requested that default be entered against Connor for failure to plead or otherwise defend the action. Clerk's No. 5. On May 5, 2010, Principal also filed a Motion for Default Judgment against Connor on the same basis. Clerk's No. 6. Because Connor never filed an appearance or answer to the Complaint, the Clerk of Court granted the pending requests and entered default against Connor. Clerk's No. 7. On May 25, 2010, Kurth filed a Motion for Default

against Connor, wherein he requested the Court enter judgment in his favor and instruct the Clerk of Court to relinquish the proceeds of Ms. Kurth's life insurance policy to him. Clerk's No. 8. On June 11, 2010, Principal filed a Motion for Dismissal and Discharge, wherein it requested that it be dismissed from this action and be discharged from further liability to either Kurth or Connor arising out of Ms. Kurth's life insurance policy. Clerk's No. 9. In an Order dated June 24, 2010, the Court granted Kurth's Motion for Default and Principal's Motion for Dismissal and Discharge. Clerk's No. 11. Specifically, the Court dismissed Plaintiff from the action, enjoined Kurth and Connor from bringing any future action against Plaintiff, and instructed the Clerk of Court to enter Default Judgment in favor of Kurth and against Connor. *Id.*

Approximately 32 minutes prior to the Court's June 24, 2010 Order being docketed, counsel Scott Alan Hall entered an appearance on behalf of Connor. One day later, Mr. Hall filed, on behalf of Connor, the present Motion requesting that the Court set aside both the Clerk's entry of Default and the Default Judgment, pursuant to Federal Rules of Civil Procedure 55(c) and 60(b).

## II. LAW AND ANALYSIS

Federal Rule of Civil Procedure 55(c) provides: "The court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." Rule 60(b) provides that a default judgment may be set aside in cases of "mistake, inadvertence, surprise, or excusable neglect."

> Although the same factors are typically relevant in deciding whether to set aside entries of default and default judgments, "[m]ost decisions ... hold that relief from a default judgment requires a

stronger showing of excuse than relief from a mere default order." ... [I]t is likely that a party who promptly attacks an entry of default, rather than waiting for grant of a default judgment, was guilty of an oversight and wishes to defend the case on the merits.

*Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 783 (8th Cir.1998) (quoting *Conn. Nat'l Mortgage Co. v. Brandstatter*, 897 F.2d 883, 885 (7th Cir.1990)).

■ In determining whether "good cause" exists to set aside the entry of default, or whether "excusable neglect" exists to set aside the entry of default judgment, courts traditionally evaluate the following factors: 1) whether the conduct of the defaulting party was blameworthy or culpable; 2) whether the defaulting party has a meritorious defense; and 3) whether the other party would be prejudiced if the default were excused. *See Johnson*, 140 F.3d at 783 (citing *Hoover v. Valley W. D M*, 823 F.2d 227, 230 (8th Cir.1987)). Notably, however, "[i]n deciding whether to set aside a default judgment for 'excusable neglect,' a district court ought not to focus narrowly on the negligent act that caused the default and ask whether the act was itself in some sense excusable. Instead, the court should take account of 'all relevant circumstances surrounding the party's omission.'" *Union Pac. R.R. Co. v. Progress Rail Servs. Corp.*, 256 F.3d 781, 782 (8th Cir.2001) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. Partnership*, 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993)). Moreover, the Court must be mindful that "default judgment is not favored by the law," *United States v. Harre*, 983 F.2d 128, 130 (8th Cir.1993), and "should be a 'rare judicial act.'" *Comiskey v. JFTJ Corp.*, 989 F.2d 1007, 1009 (8th Cir.1993) (quoting *Edgar v. Slaughter*, 548 F.2d 770, 773 (8th Cir. 1977)). Indeed, our legal system was established to allow litigants to have their claims heard on the merits by either a

judge or jury. *See, e.g., Jackson v. Beech*, 636 F.2d 831, 835 (D.C.Cir.1980); *Wendt v. Pratt*, 154 F.R.D. 229, 230 (D.Minn.1994) (citing *Swink v. City of Pagedale*, 810 F.2d 791, 792 n. 2 (8th Cir.1987)); *see also* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2693, at 91–92 (3d ed. 1998).

### A. Blameworthiness or Culpability

■ With regard to whether Connor is blameworthy or culpable in failing to respond to the Interpleader Complaint, the Court finds he was. Upon receiving notice of the Interpleader Complaint, Connor contacted New York Legal Aid, Iowa Legal Aid, and an Iowa attorney, all of whom declined to represent him for one reason or another. *See* Clerk's No. 12 ¶¶ 6–8. At that point, according to Connor's filings, he made no further attempts to obtain representation because he did not believe he could afford an attorney and because he did not believe his rights would be adversely affected by a ruling in favor of Principal on the Interpleader Complaint. *Id.* ¶ 9. Given Connor's apparent knowledge that representation in this matter was warranted, the Court finds his failure to obtain counsel or to enter a pro se appearance significantly to blame for the later entry of default and default judgment against him.

Connor's culpability and blameworthiness, however, are substantially mitigated by two facts. First, nothing on the face of the Interpleader Complaint reasonably put Connor, a non-lawyer, on notice that his rights as a claimant to Ms. Kurth's life insurance proceeds could be adversely impacted by failing to respond. Indeed, the relief requested by Principal in the Interpleader Complaint was for "judgment enjoining [Connor and Kurth] from bringing any state or federal litigation against it for proceeds of said life insurance policy and for an Order discharging Principal Life

Insurance Company from any claims by either Defendant regarding the proceeds of said life insurance." Clerk's No. 1 at 4. The Court finds it unlikely that a layperson, unfamiliar with the nuances of this seldom used procedural device, would understand that an interpleader action also forces the defendants to litigate any claims they have against one another, or that failure to respond to the interpleader complaint could result in a default judgment respecting the substantive claims between codefendants.

Second, the Court finds it significant that Connor never received notice of any of Kurth's attempts to obtain default or default judgment. Indeed, since Connor never responded to the Interpleader Complaint, he was never served with notice through the Court's CM/ECF system of any subsequent filing in the case. Likewise, it does not appear that Kurth's counsel personally served Connor with notice of any filing made on behalf of Kurth in this case. *See, e.g.,* Clerk's Nos. 6, 8 (Kurth's Motions for Default and Default Judgment, reciting service only on Principal's counsel). While certainly Connor is culpable for failing to respond in the first instance, upon receiving notice that Kurth had obtained an entry of default and was seeking a default judgment, Connor acted quickly in an effort to remedy his negligence and to protect his rights as against Kurth.[3]

### B. *Meritorious Defense*

The Court finds that Connor, as the named beneficiary on Ms. Kurth's life insurance policy, has a meritorious defense in this action. Kurth argues that "[i]t is highly unlikely that Sean Connor would be able to prevail on the merits" in this case because the "evidence of [Ms.] Kurth's in-

tent and substantial compliance to remove Sean Connor as a beneficiary is overwhelming." Def.'s Resistance at 13. The question, however, is not whether Connor is likely to prevail on the merits; the question is "whether the proffered evidence would permit a finding for the defaulting party." *Stephenson v. El–Batrawi,* 524 F.3d 907, 914 (8th Cir.2008) (citing *Johnson,* 140 F.3d at 784); *see also Jones v. Phipps,* 39 F.3d 158, 165 (7th Cir.1994) ("A meritorious defense is not necessarily one which must, beyond a doubt, succeed in defeating a default judgment, but rather one which at least raises a serious question regarding the propriety of a default judgment and which is supported by a developed legal and factual basis."). " 'The underlying concern is . . . whether there is some *possibility* that the outcome . . . after a full trial will be contrary to the result achieved by the default.' " *Id.* (emphasis added) (quoting *Augusta Fiberglass Coatings, Inc. v. Fodor,* 843 F.2d 808, 812 (4th Cir.1988)).

In this case, since Connor is the actual named beneficiary, the burden will fall to Kurth to demonstrate that Ms. Kurth "substantially complied" with the change of beneficiary provisions of her ERISA life insurance policy in an effort to remove Connor as a beneficiary. *See Phoenix Mut. Life Ins. Co. v. Adams,* 30 F.3d 554, 564 (4th Cir.1994) ("Pursuant to federal common law, an insured substantially complies with the change of beneficiary provisions of an ERISA life insurance policy when the insured: (1) evidences his or her intent to make the change and (2) attempts to effectuate the change by undertaking positive action which is for all practical purposes similar to the action required by the change of beneficiary provisions of the

---

**3.** The Court notes that Connor also asserts that he lives below the poverty line, receiving only Social Security disability income, and that he suffers from various mental and physi-

cal conditions that "may have impacted his ability to properly participate in this proceeding." Clerk's No. 12 ¶¶ 16, 18.

policy." (quotation omitted)); *Davis v. Combes*, 294 F.3d 931, 941–42 (7th Cir. 2002) (applying the same standard). Since Ms. Kurth's intent is subject to serious factual debate given the fact that Connor remains the designated beneficiary on the records relating to the life insurance policy at issue, Connor clearly has a meritorious defense, regardless of how successful that defense may ultimately prove to be.

### C. *Prejudice to Kurth*

"[P]rejudice may not be found from delay alone or from the fact that the defaulting party will be permitted to defend on the merits." *Johnson*, 140 F.3d at 785 (quoting *Swink v. City of Pagedale*, 810 F.2d 791, 792 n. 2 (8th Cir.1987)). "Setting aside a default must prejudice plaintiff in a more concrete way, such as 'loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion.'" *Id.* (citing *Berthelsen v. Kane*, 907 F.2d 617, 621 (6th Cir.1990)). In this case, Kurth contends that Connor's failure to timely respond to the Interpleader Complaint and the intervening motions has "resulted in severe prejudice to Donald Kurth." Resistance Br. at 6. Specifically, Kurth argues:

> Connor knowingly and willingly disregarded the deadline and did not cause an appearance to be filed on his behalf until June 24, 2010. This was 177 days (or nearly six months) after Connor was served with the lawsuit and 156 days after he was required by rule to file an answer or responsive pleading.
>
> The resulting prejudice to the Estate's case is obvious. Donald Kurth has since passed away and is no longer available to testify and provide direct evidence as to his daughter's intent and her substantial compliance with the change of bene-

ficiary requirements. If Connor had timely answered the Interpleader, the parties most likely would have exchanged written discovery responses and possibly taken depositions prior to Mr. Kurth's unexpected death thereby providing some record of Mr. Kurth's testimony. As it stands, the Estate's case is now inexcusably prejudiced by Sean Connor's "mistaken" belief that none of Connor's rights would be prejudiced if he simply did nothing.

*Id.* at 7.

While the Court acknowledges that some prejudice may be experienced by Kurth's estate in proving a substantive case due to Kurth's passing, the Court does not believe the prejudice is so great as that asserted. Kurth has identified a typewritten letter composed by Ms. Kurth prior to her death stating that Ms. Kurth believed that her life insurance beneficiaries were Kurth and Krista Gorsche. Clerk's No. 17 ¶ 12. According to Kurth, the typewritten note "reflects [Ms. Kurth's] belief that she had removed Sean Connor from all of her life insurance coverage through her employer and that her father and sister were her only beneficiaries." *Id.* ¶ 13. Moreover, Kurth has contended that evidence exists that Connor and Ms. Kurth ended their relationship in 1998 and that Ms. Kurth "conveyed to family members and to close friends her dislike from Mr. Connor." *Id.* ¶ 7. Given these factual assertions, it appears that Krista Gorsche and other family members and friends of Ms. Kurth can testify, should the matter to proceed to trial, as to Ms. Kurth's intent. Indeed, the Court sees no indication in any of the filings that Donald Kurth's testimony was somehow indispensable to the case.[4]

---

4. The Court does not find Kurth's assertion that depositions *might* have been taken had Connor timely replied compelling. While certainly it is possible that, had Connor timely replied, Donald Kurth *might* have been deposed by now, it is equally possible that he might not have been. Were that the case, the

Kurth also contends that his case is prejudiced because he now has no right to seek redress, if necessary, against Principal, since Principal has been discharged from the case and an injunction has issued. Kurth, however, has not articulated what claim might be made against Principal, or how such a claim is prejudiced merely by requiring Kurth and Connor to resolve the dispute between them on the merits. Moreover, Kurth did not resist Principal's request to be dismissed and discharged from the case, despite the fact that default judgment had not yet actually been entered against Connor.

## III. CONCLUSION

Under Rule 60(b)(1), "excusable neglect" includes "late filings caused by inadvertence, mistake or carelessness," *Pioneer,* 507 U.S. at 388, 395, 113 S.Ct. 1489, and " 'is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence.' " *Union Pac. R.R. Co.,* 256 F.3d at 782 (quoting *Pioneer,* 507 U.S. at 380, 394, 113 S.Ct. 1489). Under the facts and circumstances of this case, the Court believes Connor's conduct was negligent, as opposed to willful. Connor did not receive multiple notices that default or default judgment was being sought against him. Rather, he ignored only an initial filing, made by Principal, and mistakenly did not realize that his rights with respect to a codefendant could thereby be impacted. Indeed, upon receiving notification of the entry of default and the pending request for default judgment, Connor took quick action to attempt to protect his rights. Given that the determination of whether to set aside a default or default judgment is an equitable one, the Court believes the relevant considerations in this case weigh in favor of permitting Connor to defend his claim on the merits.

For these reasons, Connor's "Motion to Reconsider Order of Default Judgment Granted to Defendant Donald D. Kurth" (Clerk's No. 12) is GRANTED. The Clerk's Entry of Default dated May 18, 2010 (Clerk's No. 7) and that portion of the Court's June 24, 2010 Order granting default judgment in favor of Kurth (Clerk's No. 11) are hereby set aside. The Clerk of Court is instructed to maintain the proceeds of the disputed insurance policy until further order of the Court, which will issue at such time as the dispute is fully and finally resolved.

IT IS SO ORDERED.

evidentiary position of Kurth's claim would    be precisely the same as it now.