John **HOOVER**, Appellee,

v.

**VALLEY WEST D M, a limited partnership and Watson Centers, Inc., Appellants.**

Nos. 86–1814, 86–1879.

United States Court of Appeals, Eighth Circuit.

Submitted April 17, 1987.

Decided July 9, 1987.

Susan L. Ekstrom, Des Moines, Iowa, for appellants.

Robert A. Hutchison, Des Moines, Iowa, for appellee.

Before JOHN R. GIBSON, Circuit Judge, FLOYD R. GIBSON and HENLEY, Senior Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

John Hoover leased space for his t-shirt store in the Valley West shopping mall from Valley West D M and Watson Centers, Inc. ("Valley West"). A dispute over whether the parties agreed that Hoover's t-shirt store would eventually be the only such store in the mall led to this litigation, which in turn spawned appeals by both parties. A jury concluded that Hoover suffered $66,514 in damages caused by Valley West's negligent misrepresentation to and breach of contract with Hoover concerning this exclusive agreement. The trial court[1] reduced the damage award by $17,500. Valley West argues on appeal that (1) the trial court admitted into evidence a letter and certain oral testimony concerning the exclusive agreement in violation of the parol evidence rule; (2) the damages awarded Hoover were not proved to a certainty and the amount was excessive; and (3) the trial court, as a matter of law, should have awarded Valley West its claimed setoff damages. In a cross-appeal, Hoover contends that the district court erred in granting Valley West's motion for relief from a default judgment, and the trial court erred in vacating a portion of the jury's damage award. We affirm in all respects.

Valley West and Hoover entered a lease agreement whereby Hoover would rent space in the Des Moines, Iowa Valley West shopping mall for his t-shirt store, the "Shirt Man," beginning on May 1, 1981. Hoover testified at trial that before entering this agreement he told Bill Boecker, the manager of the Valley West mall, that he would not open a store in the mall unless the existing t-shirt store, the "Crazy Top Shop," left the mall. In response, Boecker told him that when the "Crazy Top Shop's" lease expired in January 1982 it would not be renewed. Boecker confirmed this in a letter to Hoover, dated January 16, 1981, which stated that if Valley West leased a space to Hoover, Valley West "would not be interested in renewing the Crazy Top Shop lease." Ex. 2.

Hoover opened the "Shirt Man" at the Valley West mall in the spring of 1981. In January 1982, the "Crazy Top Shop" lease expired, and that store closed. One month later, the shop reopened under the name of

---

1. This action originated before the Honorable William C. Stuart, United States District Judge for the Southern District of Iowa. Pursuant to the parties' stipulation, a jury trial was held before the Honorable Ronald E. Longstaff, United States Magistrate. We refer to Judge Stuart's rulings and orders as those of the district court, and Magistrate Longstaff's as those of the trial court.

"The Mark-it," a t-shirt store almost identical to the "Crazy Top Shop." With the competition from "The Mark-it," Hoover was unable to make a profit. He asked several Valley West representatives to abide by the alleged exclusive agreement and close down "The Mark-it." They refused, and in the spring of 1983, Hoover closed his t-shirt store.

Hoover filed a complaint in the district court. In September 1983, after Valley West had failed to plead or otherwise defend the action, a default judgment was entered. Subsequently, the district court entered judgment for Hoover in the amount of $226,414.25. Valley West then filed a motion to be relieved from the judgment, which the district court granted. A jury trial followed. The jury found in Hoover's favor on the issues of breach of contract and negligent misrepresentation, and awarded him monetary damages totaling $66,514. Valley West moved for a new trial. The trial court denied the motion, but reduced the damage award by $17,500, finding certain consequential damages unproved. This appeal followed.

■ In this diversity case, we must apply the law of Iowa to substantive issues and federal law to procedural issues. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Valley West first argues that the admission of the January 16, 1981 letter from Boecker to Hoover and the testimony concerning the existence of the exclusive agreement violated the parol evidence rule. Valley West cites nothing in the lease, however, that addresses or contradicts the parties' alleged exclusive agreement. We are convinced that the lease is at most a partially integrated agreement, and the parol evidence rule "should not have been employed here to preclude plaintiff from attempting to show the [lease agreement] was induced in part by an agreement about [exclusivity]." *I.G.L. Racquet Club v. Midstates Builders, Inc.,* 323 N.W.2d 214, 216 (Iowa 1982); *see also* Restatement (Second) of Contracts §§ 209–18 (1979).

■ Valley West's other arguments relate to damages. Notwithstanding the jury's contrary findings, Valley West argues that the damages awarded Hoover were excessive and not proved with sufficient certainty. Hoover counters by arguing that Valley West may not raise these arguments because it failed to file a motion for a directed verdict or a judgment notwithstanding the verdict. Valley West did, however, file a motion for a new trial in which it raised the issues of the propriety of damages and the excessiveness of the verdict. We view its argument as directed to the excessive nature of the verdict and its lack of evidentiary support rather than raising issues that should have been presented in a motion for a directed verdict. An appellate court may review these issues, which question the propriety of the damage award, when they are raised in a motion for a new trial. *See, e.g., Hollins v. Powell,* 773 F.2d 191, 197 (8th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1635, 90 L.Ed.2d 181 (1986); *Ferren v. Richards Mfg. Co.,* 733 F.2d 526, 529 (8th Cir.1984) (propriety of punitive damages raised in motion for new trial considered even though party failed to raise issue in directed verdict motion). Accordingly, we consider Valley West's contentions.

■ We first conclude that Hoover proved his damages with sufficient certainty. Iowa law denies recovery when it is speculative and uncertain whether damages have been sustained or, if uncertainty lies only in the amount of damages, there is no reasonable basis from which the amount can be approximated. *Larsen v. United Fed. Sav. & Loan Ass'n,* 300 N.W.2d 281, 288 (Iowa 1981). Hoover was awarded damages for actual losses and for lost profits for the term of his lease at the Valley West mall. He presented substantial documentary and testimonial evidence to buttress these claimed damages. The damages awarded Hoover were not so "speculative, contingent, conjectural, remote, or uncertain," *Shinrone, Inc. v. Tasco, Inc.,* 283 N.W.2d 280, 286 (Iowa 1979), that it was error to award them. Similarly, the amount of the verdict was reasonable, and we therefore reject Valley West's contention that this amount was flagrantly exces-

sive. *See Harsha v. State Sav. Bank*, 346 N.W.2d 791, 799 (Iowa 1984).

██ Valley West also argues that as a matter of law it is entitled to damages on its counterclaim for unpaid rent and related tenant's fees. We have some question as to whether this claim is preserved for our review as it was not raised in a motion for a directed verdict or a judgment notwithstanding the verdict. Nevertheless, the jury heard the evidence, was properly instructed on Valley West's counterclaim and Hoover's asserted defenses, and returned a verdict against Valley West. After searching the record for error, we conclude that Valley West is not entitled to damages as a matter of law.

██ We now consider the arguments raised by Hoover in his cross-appeal. Hoover first argues that the district court erred in relieving Valley West from the default judgment. A court may relieve a party from a final judgment if the party defaulted due to mistake, surprise, or excusable neglect. Fed. R. Civ. P. 60(b)(1). The district court found that Valley West's lawyer, Susan Ekstrom, may have been on vacation when Hoover filed his complaint against Valley West. Due to a lack of communication, the litigation papers were placed in Ekstrom's Valley West file, but she did not learn of the litigation until the default judgment had been entered. Based on this and other factors, the district court found that Valley West and Ekstrom's actions were negligent, but not so gross as to be inexcusably negligent. Because of the large amount of the default judgment award, because Hoover would not be prejudiced if relief was granted, and because Valley West alleged several meritorious defenses, the district court relieved Valley West of the default judgment under the rule 60(b)(1) "excusable neglect" exception.

A district court's grant or denial of a rule 60(b) motion will not be reversed unless the district court abused its discretion. *E.g., In re Design Classics, Inc.*, 788 F.2d 1384, 1386 (8th Cir.1986). The rule authorizes an extraordinary remedy that allows a court "to preserve the delicate balance between the sanctity of final judgments

and the incessant command of a court's conscience that justice be done in light of all the facts." *Rosebud Sioux Tribe v. A & P Steel, Inc.*, 733 F.2d 509, 515 (8th Cir.), *cert. denied*, 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984). While we do not commend the confusion in the offices of Valley West's attorney, we think the district court properly considered the circumstances that led to the neglect, weighed the equities involved, and concluded that no substantial rights of Hoover would be prejudiced by a grant of the motion. We thus conclude that the district court did not abuse its discretion in granting Valley West's rule 60(b) motion.

██ Finally, we consider the trial court's order, entered in response to Valley West's motion for a new trial, reducing Hoover's damage award by $17,500. Hoover had a business that applied custom printing to t-shirts. He claimed and the jury found that because he was forced to close the "Shirt Man," he lost $17,500 in profits from business the custom printing operation would have received from the "Shirt Man." The trial court found that the damages from lost profits from the custom printing operation are not susceptible of ascertainment in a manner other than by mere speculation, conjecture, or surmise. Our study of the record convinces us that the trial court did not err in finding insufficient evidence to support this portion of the jury's verdict. Hoover himself testified that the custom printing business was distinct from the "Shirt Man." It was geographically isolated from the "Shirt Man," and it operated only on a wholesale level. Wholesale business could not be transacted in the mall. While the "Shirt Man" may well have referred some business to the custom printing operation, the evidence failed to establish with certainty a causal relationship between the closing of the "Shirt Man" and the custom printing operation's profitability. We therefore conclude that the trial court did not err in ruling that it is uncertain and a matter of speculation whether the closing of the "Shirt Man" caused lost profits in the custom printing business and, if so, to what extent. *See*

*Larsen v. United Fed. Sav. & Loan Ass'n, supra.*

We have considered the other claims of error asserted by both parties and find them to be without merit.

The judgment of the district court is affirmed.