DIRECTV, INC., a California
corporation, Plaintiff,

v.

Shawn MEYERS, Brian Moser, Ross
Nielsen, and Brian Pauling,
Defendants.

No. C 02–4103–MWB.

United States District Court,
N.D. Iowa,
Western Division.

April 4, 2003.

Scott Lamoine Long, Brown, Winick, Graves, Gross, Baskerville, Schoenebaum, Des Moines, IA, John A. DeSisto, Leah E. Capritta, Featherstone & DeSisto, LLP, Denver, CO, for plaintiff.

Shawn Meyers, Akron, IA, pro se.

Matthew J. Petrzelka, Simmons, Perrine, Albright, Ellwood, Cedar Rapids, IA, for Brian Moser.

Willis J. Hamilton, Hamilton Law Firm, Storm Lake, IA, for Ross Nielsen.

James G. Thomas, A. J. Thomas, Anamosa, IA, for Brian Pauling.

**MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT PAULING, DEFENDANT PAULING'S CHALLENGE TO PERSONAL JURISDICTION, AND DEFENDANT PAULING'S MOTION TO SET ASIDE DEFAULT**

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 505

II. LEGAL ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 508
   A. Personal Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 508
   B. To Enter Default Judgment Or To Set Aside The Default? . . . . . . . . . . . . . . . . . 508
      1. Arguments of the parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 508
      2. Applicable standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 509
      3. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 511
         a. Culpability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 511
         b. Meritorious defense . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 513
         c. Prejudice to DIRECTV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 513

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 514

### I. INTRODUCTION

In a Complaint filed October 31, 2003, plaintiff DIRECTV asserts several claims against various defendants, including defendant Brian Pauling, arising from the defendants' alleged piracy of satellite television broadcasts. In Count I of its Complaint, DIRECTV alleges unauthorized reception of satellite signals in violation of 42 U.S.C. § 605(a). In Count II, DIRECTV alleges unauthorized interception of electronic communications in violation of 18 U.S.C. § 2511(1)(A). In Count III, DIRECTV alleges possession of "Pirate Access Devices" in violation of 18 U.S.C. § 2512(1)(b). In Count IV, DIRECTV asserts common-law conversion. In Counts V and VI, respectively, DIRECTV pleads causes of action for

injunctive and declaratory relief. In its Prayer, DIRECTV seeks civil damages authorized by law for violations of the criminal statutes identified, as well as injunctive and declaratory relief, and compensatory and punitive damages. "In the event of a default," DIRECTV prays for "an award of statutory damages of $10,000 for each Pirate Access Device imported into the United States in violation of 47 U.S.C. § 605(e)(4), and a further award of DIRECTV's reasonable attorney fees and costs in the amount of $850." Complaint, Prayer, ¶ 3. However, during the oral arguments described below, DIRECTV's counsel acknowledged that the reference to 47 U.S.C. § 605(e)(4) in the Prayer was in error, and that the correct reference should be to 47 U.S.C. § 605(a), with potential damages from $1,000 to $10,000 pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II). The court anticipates that DIRECTV will be filing an amended complaint reflecting the correct provisions.

In its Complaint, DIRECTV makes the following allegations about the manner in which it conducts its satellite television business that are particularly pertinent as factual background to the present motions:

3. DIRECTV encrypts (i.e., electronically scrambles) its satellite transmissions to provide security and prevent unauthorized viewing of its satellite television programing. DIRECTV offers its television programming to residential and business customers on a subscription and pay-per-view basis only. Each customer is required to obtain a DIRECTV Access Card and other system hardware (including a small satellite dish) and create an account with DIRECTV. Upon activation of the Access Card by DIRECTV, the customer can receive and view in a decrypted format (i.e., unscrambled) those channels to which the customer has subscribed or otherwise made arrangement to purchase from DIRECTV. DIRECTV monitors the customer's legitimate use of DIRECTV's television programming through a telephone line connected to a modem on the customer's equipment.

Complaint, ¶ 3.

As further background to its claims against the defendants here, DIRECTV also alleges that, on May 25, 2001, it executed Writs of Seizure at what DIRECTV alleges was the mail shipping facility used by several major sources of "pirate technologies." Complaint, ¶ 4. The pirate technologies or "Pirate Access Devices" in question are described in DIRECTV's Complaint as modified DIRECTV Access Cards and other devices that are designed to permit viewing of DIRECTV's satellite television programming without authorization by or payment to DIRECTV. *Id.* During and after the "raids" on the mail shipping facility, DIRECTV alleges that it came into possession of sales, shipping, and other records that are evidence that the defendants purchased illegal "Pirate Access Devices." *Id.* at ¶ 5. This information is purportedly part of the basis for DIRECTV's claims against each of the defendants.

The specific allegations against defendant Pauling are the following:

16. Defendant Brian Pauling is now a resident of Dillingham, Alaska. Prior to December 2000, however, Defendant Pauling was a resident of Central City, Iowa. On information and belief, Defendant Pauling purchased a Pirate Access Device, consisting of a programmer primarily designed to illegally modify DIRECTV Access Cards. The device was shipped to Defendant Pauling at his address in Central City, Iowa, via the United States Postal Service or commercial mail carriers at his address in Central City, Iowa. DIRECTV received no callbacks from Defendant Pauling's equipment from March 2000 to December 2000, after which time Defendant Pauling disconnected his service.

Complaint, ¶ 16.

These allegations concerning Pauling's past residence in Iowa and present residence in Alaska appear to comport with Pauling's own representations in an affidavit accompanying his challenge to personal jurisdiction in this case. However, DIRECTV's Complaint also makes the following general allegation in the portion of its Complaint regarding jurisdiction and venue:

9. Each Defendant is a resident of this district. Personal jurisdiction and venue are proper in this district pursuant to 28 U.S.C. § 1391(b).

**507**

Complaint at ¶ 9. This erroneous general allegation that Pauling resides in Iowa was part of the basis for Pauling's challenge to personal jurisdiction in this case.

On January 8, 2003, DIRECTV filed a return of service executed upon defendant Pauling personally on December 19, 2002, in Dillingham, Alaska. The summons indicated that an answer would be due twenty days after service, which the parties agree would have made Pauling's answer due on January 8, 2003. No answer was filed by that deadline. The parties also agree than an attorney for Pauling in Alaska, Mr. Himschoot, contacted counsel for DIRECTV to request additional time to answer the Complaint. DIRECTV contends that it agreed to an informal extension of the deadline to file an answer to and including January 20, 2003. However, counsel eventually engaged by Pauling in Iowa asserts in Pauling's moving papers that counsel understood that Pauling had been given an extension until the end of January to file his answer. There is no affidavit from Pauling's counsel, either counsel in Alaska or counsel eventually engaged in Iowa, averring to the basis for any such understanding about when Pauling's answer would be due, and Pauling's own affidavit is silent on the issue. At the oral arguments, DIRECTV's counsel represented that Mr. Himschoot had indicated that he would not represent Pauling in this matter, but was

instead only assisting him in his efforts to find Iowa counsel. Therefore, DIRECTV contends that it had no idea whether Pauling was represented by counsel or whether he intended to defend the case on the merits, once what DIRECTV believed was the deadline for Pauling's answer had passed without further contact from Pauling or anyone representing him. Pauling has not yet filed an answer in this case. Instead, on January 30, 2003, Pauling filed his "Limited Appearance To Contest Jurisdiction" through Iowa counsel.

However, on January 24, 2003, almost a week before Pauling filed his challenge to personal jurisdiction in this case, the Clerk of Court had already entered Pauling's default on the record pursuant to DIRECTV's motion for entry of default against Pauling filed that same day. The entry of default against Pauling prompted a motion by DIRECTV for entry of default judgment and Pauling's motion to set aside the default.

Thus, this matter comes before the court pursuant to plaintiff DIRECTV's January 29, 2003, motion for default judgment against defendant Pauling (docket no. 19); defendant Pauling's January 30, 2003, "Limited Appearance To Contest Jurisdiction" (docket no. 20), which this court has construed as a motion asserting "lack of jurisdiction over the person" pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure;[1] and defendant

1. The court's construction of defendant Pauling's "Limited Appearance To Contest Jurisdiction" in the manner indicated was by order dated February 28, 2003, and docketed March 3, 2003, as docket no. 26. As this court explained in that order, Rule 12 of the Federal Rules of Civil Procedure abolished the distinction between a "general appearance" and a "special appearance" in federal court when the Rules were adopted in 1938. See Fed. R. Civ. P. 12; see also Davenport v. Ralph N. Peters & Co., 386 F.2d 199, 204 (4th Cir.1967) ("[S]ince the advent of Rule 12(b), Fed.R.Civ.P., the distinction between general and special appearances in federal practice has been abolished."). Instead, a party may assert lack of personal jurisdiction by pre-answer motion pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 12(b)(2). Similarly, Rule 66 of the Iowa Rules of Civil Procedure abolished the "special appearance" effective July 1, 1987. See Iowa R. Civ. P. 66 ("The special appearance is abolished. A defendant may not appear specially for the sole purpose of attacking the jurisdiction of the

court.") (as amended effective July 1, 1987; stricken effective Jan. 24, 1998); see generally Nationwide Engr'g & Control Sys. v. Thomas, 837 F.2d 345, 347–48 & n. 2 (8th Cir.1988); Moyer v. City of Des Moines, 505 N.W.2d 191, 193 n. 3 (Iowa 1993). Instead, under Iowa law, a defendant may assert lack of personal jurisdiction by pre-answer motion pursuant to former Rule 104, see id., which has recently been recodified, in pertinent part, as Rule 1.421. Iowa R. Civ. P. 1.421(1)(b). Therefore, there was no authority for defendant Pauling's "Limited Appearance To Contest Jurisdiction," which prompted the court, in the interests of justice, to construe the "Limited Appearance" as a motion asserting "lack of jurisdiction over the person" pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

The court's Order of February 28, 2003, also set oral arguments on the pending motions now before the court at Pauling's request. The oral arguments were originally set for March 27, 2003, but they were subsequently rescheduled, owing to conflicts in the court's schedule, for April 2, 2003.

Pauling's February 19, 2003, motion to set aside the entry of default against him (docket no. 22). Each of the pending motions has been resisted and DIRECTV has filed a reply to Pauling's resistance to the entry of default judgment.

The court heard oral arguments on the pending motions on April 2, 2003. Plaintiff DIRECTV was represented by Rebecca A. Brommel of Brown, Winick, Graves, Gross, Baskerville and Schoenebaum, P.L.C., in Des Moines, Iowa. Defendant Brian Pauling was represented by A.J. Thomas and James G. Thomas of the Thomas Law Firm in Anamosa, Iowa. With leave of the court, Pauling was permitted to fax the court a courtesy copy of a Brief in Support of His Motion to Set Aside Default Entry immediately after the oral arguments. The pending motions are now fully submitted and the court turns to their disposition.

## II. LEGAL ANALYSIS

The court will first consider defendant Pauling's challenge to the court's personal jurisdiction over him, because lack of such jurisdiction would bar the court from considering the entry of default judgment and would also necessitate vacating the entry of default by the Clerk of Court. If necessary, the court will then turn to the question of whether default judgment should be entered against Pauling, or whether the default entered by the Clerk of Court on January 24, 2003, should instead be set aside, for reasons other than lack of personal jurisdiction.

### A. Personal Jurisdiction

The question of whether or not there is personal jurisdiction over defendant Pauling in this case need not detain the court long. This is so, because at the oral arguments on April 2, 2003, Pauling's counsel stated that, after reviewing DIRECTV's resistance to Pauling's challenge to personal jurisdiction and applicable case law, Pauling concedes that DIRECTV has made sufficient showing of personal jurisdiction over him in this action, at least at this stage of the proceedings. Counsel represented that, as a consequence of this concession, Pauling was withdrawing his challenge to personal jurisdiction in this case. Therefore, Pauling's challenge to per-

sonal jurisdiction will be denied as moot upon withdrawal of the challenge.

### B. To Enter Default Judgment Or To Set Aside The Default?

Although the issue of personal jurisdiction is now moot, the issues relating to default and default judgment are not. Therefore, the court turns to DIRECTV's motion for entry of default judgment against defendant Pauling and defendant Pauling's motion to set aside the entry of default by the Clerk of Court.

### 1. Arguments of the parties

The remaining motions present two sides to the same coin: DIRECTV seeks entry of default judgment, following entry of default by the Clerk of Court, and Pauling seeks to have the Clerk's entry of default set aside, so that he can defend this action on the merits. Pauling argues that his counsel understood, from conferring with DIRECTV's counsel, that Pauling had an informal extension until the end of January to answer DIRECTV's Complaint, but that DIRECTV jumped the gun by seeking entry of default and default judgment on January 24, 2003, before his deadline to answer had passed. At the oral arguments, Pauling's counsel admitted that counsel had misunderstood, or at most, made a careless mistake about, the deadline for Pauling's answer to DIRECTV's Complaint. Pauling contends that the Federal Rules of Civil Procedure allow a court to set aside the entry of default for mistakes, inadvertence, or excusable neglect, and Pauling asserts that he did not move or plead in response to the Complaint in a timely fashion for one or more of these reasons. He also contends that, because he is a resident of the State of Alaska, he should be allowed time in order to retain counsel to appear on his behalf in Iowa, although somewhat strangely, this argument is advanced by Iowa counsel. Pauling argues, further, that DIRECTV is attempting to use the federal courts and default procedures to obtain money without allowing him the benefit of trial. Finally, he contends that, even in light of DIRECTV's allegations, there has been no proof that he imported an illegal access de-

vice, so that the statutory damages claimed by DIRECTV on default cannot be awarded.

DIRECTV, however, contends that its counsel's conversations with Pauling's attorney in Alaska, Mr. Himschoot, in early January 2003, involved only an agreement to allow Pauling until January 20, 2003, to file his Answer, and that no one ever contacted DIRECTV on Pauling's behalf thereafter. DIRECTV also contends that Pauling has not shown any "exceptional" circumstances that would warrant setting aside the default entered against him. Instead, DIRECTV contends that Pauling has shown no more than a subjective belief about what was the deadline for his answer, which does not rise to the level of mistake, inadvertence, surprise, or excusable neglect. DIRECTV points out that Pauling's affidavit concerning personal jurisdiction was executed January 14, 2003, so that a timely answer—that is, one filed by the January 20, 2003, deadline asserted by DIRECTV—was possible. Next, DIRECTV contends that nothing in the rules of procedure supports Pauling's contention that he should be given extra time to find an in-state attorney just because he is an out-of-state defendant, and it was DIRECTV's understanding from Pauling's attorney in Alaska that he would be meeting with or talking to Iowa counsel the second week in January, still well before Pauling's answer was due, so that no extra time to find Iowa counsel was actually required. DIRECTV also contends that Pauling's challenges to personal jurisdiction are irrelevant to the question of whether the default against him should be set aside. Finally, DIRECTV argues that, far from improperly trying to obtain money from Pauling without the inconvenience of a trial, DIRECTV is properly pursuing the entry of default and default judgment, pursuant to applicable rules and based on a properly pleaded prayer for relief in the event that the defendant defaults.

### 2. *Applicable standards*

Rule 55 of the Federal Rules of Civil Procedure provides, in pertinent part, as follows:

**Rule 55. Default**

(a) **Entry.** When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default.

(b) **Judgment.** Judgment by default may be entered as follows:

(1) **By the Clerk.** When the plaintiff's claim against a defendant is for a sum certain or for a sum which can by computation be made certain, the clerk upon request of the plaintiff and upon affidavit of the amount due shall enter judgment for that amount and costs against the defendant, if the defendant has been defaulted for failure to appear and is not an infant or incompetent person.

(2) **By the Court.** In all other cases the party entitled to a judgment by default shall apply to the court therefor; but no judgment by default shall be entered against an infant or incompetent person unless represented in the action by a general guardian, committee, conservator, or other such representative who has appeared therein. If the party against whom judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by any statute of the United States.

(c) **Setting Aside Default.** For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).

FED. R. CIV. P. 55(a)-(c).

In *Hayek v. Big Brothers/Big Sisters of America*, 198 F.R.D. 518 (N.D.Iowa 2001), this court summarized the mechanics under Rule 55 of obtaining the entry of default and default judgment, as well as the method for

setting aside a default or default judgment, as follows:

> Under Rule 55, "[w]hen a party 'has failed to plead or otherwise defend' against a pleading listed in Rule 7(a), entry of default under Rule 55(a) must precede grant of a default judgment under Rule 55(b)." *See Johnson v. Dayton Elec. Mfg. Co.,* 140 F.3d 781, 783 (8th Cir.1998); *see also Hagen v. Sisseton–Wahpeton Community College,* 205 F.3d 1040, 1042 (8th Cir.2000) (citing *Johnson* for this requirement). "Entry of a default under Federal Rule of Civil Procedure 55(a) is not, as such, entry of a judgment; it merely permits the plaintiff to move for a default judgment under Rule 55(b)(2), assuming that the default is not set aside under Rule 55(c)." *Inman v. American Home Furniture Placement, Inc.,* 120 F.3d 117, 118 n. 2 (8th Cir.1997). Moreover, " 'a default judgment cannot be entered until the amount of damages has been ascertained.' " *Hagen,* 205 F.3d at 1042 (quoting *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 97 (2d Cir.1993)). Thus, if the judgment sought is not for a sum certain, Rule 55(b)(2) provides that "the court may conduct such hearings or order such references as it deems necessary and proper" in order to "enable the court to enter judgment." Fed.R.Civ.P. 55(b)(2). In short, as this court has explained, Rule 55 "requires two steps before entry of a default judgment: first, pursuant to Fed. R.Civ.P. 55(a), the party seeking a default judgment must have the clerk enter the default by submitting the required proof that the opposing party has failed to plead or otherwise defend; second, pursuant to Fed.R.Civ.P. 55(b), the moving party may seek entry of judgment on the default under either subdivision (b)(1) or (b)(2) of the rule." *Dahl v. Kanawha Inv. Holding Co.,* 161 F.R.D. 673, 683 (N.D.Iowa 1995).

*Hayek,* 198 F.R.D. at 520.

In this case, the Clerk of Court entered defendant Pauling's default on the record on January 24, 2003, pursuant to Rule 55(a), completing the first step in the two-step process toward default judgment. *See id.* Thus, the questions presented by the pending motions are whether the court should now take the second step, entry of default judgment against Pauling pursuant to Rule 55(b)(2), or whether the court should instead set aside the Clerk's entry of default against Pauling pursuant to Rule 55(c). *See id.*

■ Again, Rule 55(c) expressly provides that " *[f]or good cause shown* the court may set aside an entry of default." FED. R. CIV. P. 55(c) (emphasis added). On the other hand, the Rule provides that a *default judgment* may be set aside "in accordance with Rule 60(b)." *Id.* Thus, whether or not to set aside only an entry of default is subject to a more lenient standard than the question of whether or not to set aside a default judgment. *See Johnson v. Dayton Elec. Mfg. Co.,* 140 F.3d 781, 783–84 (8th Cir.1998) (a motion to set aside clerk's entry of default is subject to a more lenient "good cause" standard than is a motion to set aside a default judgment entered by the court); *see also United States ex rel. Shaver v. Lucas Western Corp.,* 237 F.3d 932, 933 (8th Cir.2001) (citing *Johnson* for the relative leniency of the standard for setting aside entry of default).

As the Eighth Circuit Court of Appeals explained more fully in *Johnson v. Dayton Elec. Mfg. Co.,* 140 F.3d 781 (8th Cir.1998), Rule 55(c) provides that the district court may set aside an entry of default "[f]or good cause shown," and may set aside a default judgment "in accordance with Rule 60(b)." Although the same factors are typically relevant in deciding whether to set aside entries of default and default judgments, "[m]ost decisions ... hold that relief from a default judgment requires a stronger showing of excuse than relief from a mere default order." *Connecticut Nat'l Mortgage Co. v. Brandstatter,* 897 F.2d 883, 885 (7th Cir.1990); *accord Shepard Claims Serv., Inc. v. William Darrah & Assocs.,* 796 F.2d 190, 193–94 (6th Cir. 1986); *Meehan v. Snow,* 652 F.2d 274, 276–77 (2d Cir.1981). This is a sound distinction. There is a "judicial preference for adjudication on the merits," *Oberstar v. F.D.I.C.,* 987 F.2d 494, 504 (8th Cir.1993), and it is likely that a party who promptly attacks an entry of default, rather than waiting for grant of a default judgment, was guilty of an oversight and wishes to defend the case on the merits. Dayton Electric is entitled to the more lenient

"good cause" standard in considering the denial of its motion to set aside.

Traditionally, in deciding issues of this kind, our court and others have looked at whether the conduct of the defaulting party was blameworthy or culpable, whether the defaulting party has a meritorious defense, and whether the other party would be prejudiced if the default were excused. *See Hoover v. Valley West D M*, 823 F.2d 227, 230 (8th Cir.1987). The Supreme Court recently addressed this subject in *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). Applying the more stringent standard in Rule 60(b)(1), the Court held: (i) "excusable neglect" includes "late filings caused by inadvertence, mistake or carelessness" (thereby resolving a conflict in the circuits by overruling decisions of this court requiring proof of circumstances beyond the moving party's control); and (ii) whether conduct is excusable is an equitable determination that "tak[es] account of all relevant circumstances surrounding the party's omission." 507 U.S. at 388, 395, 113 S.Ct. at 1494–95, 1498; *see Fink v. Union Central Life Ins. Co.*, 65 F.3d 722, 723–24 (8th Cir.1995). The Court specifically enumerated some factors, which we applied in *In re Jones Truck Lines, Inc.*, 63 F.3d 685, 687 (8th Cir.1995): "the danger of prejudice to the [plaintiff], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the [Rule 60(b)] movant, and whether the movant acted in good faith." 507 U.S. at 395, 113 S.Ct. at 1498. In addition, we believe the existence of a meritorious defense continues to be a relevant factor after *Pioneer*. Such a showing "underscore[s] the potential injustice of allowing the case to be disposed of by default," 10 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane at § 2697, thus triggering "the incessant command of a court's conscience that justice be done in light of all the facts.'" *Hoover*, 823 F.2d at 230, quoting *Rosebud Sioux Tribe v. A & P Steel, Inc.*, 733 F.2d 509, 515 (8th Cir.), *cert. denied*, 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984).

*Johnson*, 140 F.3d at 783–84 (footnote omitted); *accord Shaver*, 237 F.3d at 933 (citing *Johnson* for the proposition that the factors pertinent to setting aside a default, as opposed to a default judgment, are culpability of the defaulting party, the existence of meritorious defense, and any prejudice to the other party); *Hayek v. Big Brothers/Big Sisters of Am.*, 198 F.R.D. 518, 521–25 (N.D.Iowa 2001) (citing *Johnson* and applying these standards).

### 3. Analysis

#### a. Culpability

■ In light of *Johnson*, this court's analysis of whether to set aside the default begins with consideration of Pauling's "culpability" for the failure to make a timely response to the Complaint. *See id.* The record shows that Pauling did not simply ignore DIRECTV's Complaint, but instead sought an extension of time to obtain Iowa counsel and to respond to the Complaint. *See Hayek*, 198 F.R.D. at 522 (noting that the defendant had not simply ignored the complaint, but had instead attempted to clarify why the plaintiff believed that the complaint had been properly served and when an answer was due). DIRECTV does not dispute that Pauling's Alaska counsel contacted its counsel, and does not dispute that there was an agreement for an informal extension of Pauling's deadline to answer the Complaint. The dispute thus centers on just what extension was agreed upon—until January 20, 2003, as DIRECTV maintains, or until the end of January, as Pauling maintains—and whether any misunderstanding about the length of the extension is excusable.

The court notes that neither Pauling's Alaska counsel nor his Iowa counsel has submitted an affidavit averring to the circumstances that led them to believe that Pauling had until the end of January to answer the complaint. The absence of such an affidavit gives the court little basis upon which to determine whether any misunderstanding is "excusable." Certainly, the more prudent thing for Pauling's counsel to do to ensure that Pauling did not default was to seek an extension of the time to answer *from the court. See id.* at 523. Nevertheless, it was not necessarily unrea-

sonable for counsel to rely on what counsel believed was an informal agreement concerning the deadline. *Id.* At oral arguments, Iowa counsel acknowledged that he had made a mistake or carelessly misunderstood the deadline for Pauling's answer, but that Pauling and his counsel had both acted promptly to set aside the default once it was entered. Pauling's counsel also represented that Pauling did not receive any notice of DIRECTV's intent to seek entry of default upon passage of the agreed deadline until well after the default had, in fact, already been entered. Furthermore, the court finds that Pauling did, indeed, attempt to respond to the Complaint by what he understood was his deadline, by filing his "Limited Appearance To Contest Jurisdiction" on January 30, 2003, which appears to confirm Pauling's understanding of the applicable deadline as well as his intent to defend the action rather than default, even if Pauling's counsel now concedes that his understanding of the deadline was mistaken. This is so, because at the time that Pauling served his challenge to personal jurisdiction, it appears that neither he nor his counsel had received notice that DIRECTV had moved for entry of default or that default had actually been entered by the Clerk of Court, and therefore, neither Pauling nor his Iowa counsel had been put on notice that their belief about the deadline to answer was mistaken.

Moreover, there was something precipitate about DIRECTV's motion for entry of default within just a few days after the expiration of what DIRECTV's counsel understood was the informally-agreed deadline: DIRECTV knew that Pauling had Alaska counsel and was trying to obtain Iowa counsel, and should reasonably have considered under those circumstances that failure to respond by the informally-agreed deadline might indicate a misunderstanding rather than an intentional default. Under the circumstances,

failure to attempt to notify Pauling's counsel that DIRECTV was about to seek entry of default against Pauling appears to be contrary to Rule 20 of the Iowa Standards for Professional Conduct, which states, "We will not cause any default or dismissal to be entered without *first* notifying opposing counsel, when we know his or her identity." Iowa Standards of Professional Conduct, Rule 20 (emphasis added).[2] At oral arguments, DIRECTV attempted to explain away its failure to make any adequate attempt to inform Pauling or his counsel of DIRECTV's intent to seek entry of default, based on passage of the agreed deadline to answer, prior to doing so. First, DIRECTV asserted that Mr. Himschoot, Pauling's Alaska counsel, had informed DIRECTV that he would not be representing Pauling in this action, but was instead only assisting him in his efforts to find Iowa counsel, so that DIRECTV understood that Mr. Himschoot was *not* representing Pauling, and DIRECTV, consequently, did not know that any attorney was representing Pauling when DIRECTV heard nothing by the agreed deadline to answer. This argument is not persuasive, because DIRECTV made no effort to contact Pauling or Mr. Himschoot to determine whether Pauling had found Iowa counsel, which certainly would have been a course more in keeping with the spirit of the Iowa Standards of Professional Conduct. Second, DIRECTV contends that it did, indeed, send a notice of intent to seek entry of default to Mr. Pauling himself prior to moving the Clerk of Court to enter the default. However, DIRECTV apparently sought the entry of default by the Clerk of Court a number of days before Mr. Pauling ever received, by mail in Alaska, the notice of DIRECTV's intent to seek the entry of default. The court finds that DIRECTV made no reasonable effort to ensure that Mr. Pauling or his counsel got notice of DIRECTV's intent to seek entry of default *before* DIRECTV actu-

---

**2.** Although the Preamble to the Iowa Standards for Professional Conduct states that "[t]hese standards shall not be used as a basis for litigation or for sanctions or penalties," and that "[n]othing in these standards supersedes or detracts from existing disciplinary codes or alters existing standards of conduct against which lawyer negligence may be determined," the Preamble also states that "[t]hese standards should be reviewed and followed by all judges and lawyers in the state." Iowa Standards of Professional Conduct, Preamble. Thus, while they may not establish a basis for sanctions, these Standards do inform the court about the "reasonableness" of the conduct of DIRECTV's counsel in seeking the entry of default against Pauling under the circumstances, including DIRECTV's counsel's knowledge that Pauling had Alaska counsel and was attempting to obtain Iowa counsel to defend the action.

ally sought the entry of default. Third, DIRECTV contends that Pauling and his counsel could have cleared up any confusion about the deadline for answering and could have requested a further extension simply by making a telephone call to DIRECTV's counsel. This argument, however, cuts both ways: DIRECTV could just as easily have called Mr. Pauling or his Alaska counsel, Mr. Himschoot, prior to filing a motion for entry of default, if DIRECTV had seriously intended to notify Pauling of DIRECTV's intent to seek entry of default or if DIRECTV had intended to make a reasonable effort to determine whether a party who had professed an intent to be represented by counsel and to defend the action had made a mistake or was operating under a misapprehension about the deadline to answer.

Also, at best, DIRECTV acted upon what appeared to be no more than a "marginal failure" to meet the agreed deadline, where DIRECTV's motion for entry of default bears a certificate of service on January 22, 2003, just two days after the supposedly agreed deadline, rather than conduct that clearly demonstrated "contumacious or intentional delay or disregard for deadlines and procedural rules." *Johnson,* 140 F.3d at 784 (pointing out that such a distinction between "marginal failure" and "contumacious or intentional delay" is relevant to the "blameworthiness" inquiry). Thus, under the circumstances, the court is hesitant to let stand an entry of default that is based on misunderstandings between counsel about an informal extension of the deadline to answer.

#### b.    Meritorious defense

█   Second, *Johnson* counsels the court to consider whether the defaulting party has a meritorious defense. *See Johnson,* 140 F.3d at 785. As the Eighth Circuit Court of Appeals explained in *Johnson,* the issue is whether the asserted defense " 'would permit a finding for the defaulting party,' not whether it is undisputed." *Id.* (quoting *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.,* 843 F.2d 808, 812 (4th Cir.1988)). Pauling asserts that he has such "meritorious defenses," which weighs against permitting the entry of default against him to stand.

What appears to be Pauling's first "meritorious defense" is his contention—in his affidavit, for example—that he attempted to move his DIRECTV service to Alaska when he moved his residence, but was notified by DIRECTV that DIRECTV did not provide service in Alaska, and so DIRECTV sent him a refund. This defense, however, suggests next to nothing about whether Pauling had used Pirate Access Devices *in Iowa,* which is the wrongful conduct alleged in DIRECTV's present Complaint. On the other hand, Pauling also avers that he had *and paid for* DIRECTV's subscription services from February 2000 through December 2000, while he was still a resident of Iowa, and during the period that DIRECTV identifies as the subject of its Complaint. This defense is considerably more likely to "permit a finding for the defaulting party." *Id.* At the oral arguments, and in his brief provided to the court after the oral arguments, Pauling added further "meritorious defenses," including contentions that the "descrambler" Pauling allegedly purchased had been legally sold and has valuable legal uses; that there was no showing that the lack of "call backs" from Pauling's equipment after he purchased the alleged Pirate Access Devices was the result of illegal conduct rather than equipment malfunctions, or indeed, that there had ever been any "call backs" from his equipment prior to the purchase of the alleged Pirate Access Devices; and that DIRECTV relies on inferences that don't reasonably add up to evidence of illegal pirating of satellite signals. Again, some or all of these defenses could "permit a finding for the defaulting party." *Id.* Therefore, this "meritorious defenses" consideration also weighs, at least marginally, in favor of setting aside the default.

#### c.    Prejudice to DIRECTV

█   The last factor in the analysis is "prejudice" to the plaintiff. *See Johnson,* 140 F.3d at 785. DIRECTV contends that the court does not need to find prejudice to the plaintiff to refuse to set aside an entry of default, citing *Iowa State University Research Foundation, Inc. v. Greater Continents, Inc.,* 208 F.R.D. 602, 605 (S.D.Iowa 2002). However, it is clear that, under *Johnson,* whether or not the plaintiff is prejudiced is a relevant factor in the analysis. *See Johnson,* 140 F.3d at 785. Moreover, the

court in *Iowa State University Research Foundation* actually found such prejudice, in the form of a unilateral procedural restraint on preliminary injunctive relief resulting from the defendant's actions, and the likelihood of resulting harm to the plaintiff. *See Iowa State Univ. Research Found.*, 208 F.R.D. at 605. Thus, the court may properly consider whether there is any prejudice to DIRECTV that would weigh against setting aside the entry of default against Pauling.

As the Eighth Circuit Court of Appeals also explained in *Johnson*, the "prejudice" at issue in circumstances such as those presented here "may not be found from delay alone or from the fact that the defaulting party will be permitted to defend on the merits." *Johnson*, 140 F.3d at 785 (citing *Swink v. City of Pagedale*, 810 F.2d 791, 792 n. 2 (8th Cir.), *cert. denied*, 483 U.S. 1025, 107 S.Ct. 3274, 97 L.Ed.2d 772 (1987)). Instead, "[s]etting aside a default must prejudice plaintiff in a more concrete way, such as 'loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion.'" *Id.* (quoting *Berthelsen v. Kane*, 907 F.2d 617, 621 (6th Cir.1990)). DIRECTV has not attempted to identify any such "prejudice" in this case, and the court can see none. Instead, this matter is in its early stages, no discovery has been conducted, and another defendant has answered the Complaint indicating an intent to defend on the merits, so that further proceedings appear inevitable, whether or not Pauling is allowed to defend on the merits. Therefore, this factor plainly does not weigh against setting aside the default against Pauling, and instead suggests that the claims against him should also be addressed on the merits.

In light of the foregoing, the court concludes that the default entered against Pauling should be set aside pursuant to Rule 55(c). That being so, the prerequisite for entry of default judgment is absent, and DIRECTV's motion for entry of default judgment must be denied. *See* FED. R. CIV. P. 55(a) & (b)(2).

## III. CONCLUSION

Pauling has withdrawn his challenge to the court's personal jurisdiction over him in this action. Therefore, the court has addressed on the merits only the parties' motions regarding entry of default and default judgment. The court concludes that the default entered against Pauling pursuant to Rule 55(a) must be set aside for "good cause" pursuant to Rule 55(c). Because this conclusion erases the first step toward default judgment under Rule 55, DIRECTV is not entitled to take the second step, the entry of default judgment. *See* FED. R. CIV. P. 55(a) & (b)(2).

THEREFORE,

1. Defendant Pauling's January 30, 2003, "Limited Appearance To Contest Jurisdiction" (docket no. 20), which this court has construed as a motion asserting "lack of jurisdiction over the person" pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, is **denied as moot** upon withdrawal of the motion by the movant.

2. Defendant Pauling's February 19, 2003, motion to set aside the entry of default against him (docket no. 22) is **granted**.

3. Plaintiff DIRECTV's January 29, 2003, motion for default judgment against defendant Pauling (docket no. 19) is **denied**.

**IT IS SO ORDERED.**

